## WALTON v. MATHER.

(Supreme Court, Appellate Term, First Department. April 27, 1896.)

1. CONTRACT—WHAT CONSTITUTES.

A memorandum signed by both parties, reciting that defendant had engaged plaintiff's services for the season at a specified salary, "subject to the conditions and regulations of a contract which is to be substituted for this memorandum," constitutes no binding agreement in itself.

2. SAME.

A subsequent verbal agreement between the parties to adopt such memorandum as a final contract is valid.

3. SAME—ADOPTION OF PREVIOUS MEMORANDUM.

After the parties had signed a memorandum reciting that defendant had engaged plaintiff's services at a specified salary, "subject to the conditions and regulations of a contract which is to be substituted for this memorandum," a conversation was had, in which defendant stated that she could not pay plaintiff a greater salary than that specified in the memorandum, and that he would have to stay on the original contract, whereupon plaintiff rendered the services for which he was engaged. *Held*, that the parties thereby adopted the memorandum as a final contract.

4. SAME—MUTUALITY.

A memorandum signed by both parties, reciting that "I have engaged" plaintiff's services for the season at a specified salary, is not unilateral, plaintiff's signature to such memorandum being an assent to the engagement specified therein.

Appeal from city court of New York, general term.

Action by Henry E. Walton against Margaret Mather to recover on a contract for services. From a judgment of the general term of the city court affirming a judgment entered on a verdict for plaintiff and affirming an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

Dittenhoefer, Gerber & James, for appellant.

Nathan Lewis and Samuel G. Adams, for respondent.

DALY, P. J. In the month of June, 1890, the plaintiff was engaged by the defendant's agent as actor and stage manager, and they signed the following memorandum:

"This memorandum certifies that I have engaged, this 12th day of June, 1890, Mr. Henry E. Walton for the Margaret Mather Dramatic Company season of 1890–1, and at a salary of seventy-five (75) dollars per week, subject to the conditions and regulations of a contract which is to be substituted for this memorandum.

"[Signed]          D. C. Willoughby.
"H. E. Walton."

This writing afforded no ground of action by either party against the other, as neither was under any obligation to subsequently agree to conditions and stipulations, and a refusal to do so would be a sufficient answer to a demand for a substituted contract. May-

er v. McCreery, 119 N. Y. 434, 23 N. E. 1045. Where conditions are left indefinite, to be fixed by a further agreement, there is no contract binding upon the parties. Law v. Pemberton, 10 Misc. Rep. 362, 31 N. Y. Supp. 21; Chinnock v. Marchioness of Ely, 4 De Gex, J. & S. 638; Bertel v. Neveux, 39 Law T. (N. S.) 257. But it appears from the evidence that, after the signing of the memorandum, and before the commencement of the season mentioned in it, the plaintiff was introduced by the agent, Willoughby, to the defendant, Miss Mather, and a conversation ensued between them on the subject of the employment, which originally contemplated the production of one play, "Joan d'Arc." According to the plaintiff's testimony, they discussed, among other things, his receiving, if she played her repertoire,—that is to say, other plays,—another contract guarantying him an additional $50 a week, thus bringing him $125 a week; but she said the times were hard, and she could not afford to pay him, as she was not going to produce "Joan d'Arc," but she would fall back upon her repertoire, and he had to play these five or six plays, and had to do it at the salary she signed for; and that he "would have to stay on the original contract of $75 a week." The plaintiff's version of this interview was disputed by the defendant and by Willoughby, but it clearly appeared that there was a conversation between them on business; and the testimony not only of plaintiff, but of the defendant and of Willoughby, was such that the jury might reasonably find that the defendant and the plaintiff adopted the written memorandum of July 12th, and the arrangement which it evidenced, as the final agreement between them. It was entirely competent for the plaintiff and defendant, within the terms of the memorandum, to make a verbal agreement as the substitute contemplated by it, or, by verbal agreement, to adopt such memorandum, or the engagement entered into by the agent, as a final contract; for the memorandum did not specify that the engagement was to be subject to the execution of a writing, and no writing was necessary, as the agreement was not within the statute of frauds. The parties might, by verbal agreement, waive the provisions for a substitute contract and for further conditions and stipulations. And this they did, in effect, by the defendant requiring the plaintiff to stay on the original contract, and his assent thereto by rendering the service for which he was engaged. The fair inference from the language used was that he was to go on and serve as actor and stage manager in the Margaret Mather Dramatic Company for the season of 1890–91 at the specified salary. Before the season was terminated, the plaintiff was discharged. He claimed damages amounting to his salary for the balance of the season, but the jury awarded him only two weeks' salary. This was upon the defendant's evidence of a usage that theatrical engagements were understood to include a proviso for a discharge upon two weeks' notice. No question arises upon this evidence, since the plaintiff does not appeal.

The last contention of the appellant is that the memorandum, if an agreement, was unilateral, and that plaintiff agreed to nothing

on his part; but the signature of the plaintiff to the memorandum was an assent to the engagement therein specified, and the evidence, apart from the memorandum, shows that the plaintiff was engaged as actor and stage manager, and his signature was an assent to that engagement.

The judgment and order should be affirmed, with costs. All concur.